**Nos. 2015-104, -105, -106, -107, -108, -109, -111**

# United States Court of Appeals
# for the Federal Circuit

---

2015-104
_____

### IN RE CAPCOM U.S.A., INC.,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00751-JRG, Judge J. Rodney Gilstrap.*

---

2015-105
_____

### IN RE ELECTRONIC ARTS INC.,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00753-JRG, Judge J. Rodney Gilstrap.*

---

*(caption continued inside)*

---

## NON-CONFIDENTIAL CONSOLIDATED RESPONSE OF BABBAGE HOLDINGS, LLC TO PETITIONS FOR WRIT OF MANDAMUS

ANTHONY M. GARZA
STEVEN C. CALLAHAN
CHARHON CALLAHAN ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, TX 75219
(214) 521-6400
agarza@ccrglaw.com
scallahan@ccrglaw.com
*Counsel for Respondent*

November 14, 2014

*(caption continued)*
_____

2015-106
_____

IN RE BANDAI NAMCO GAMES AMERICA INC.,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00755-JRG, Judge J. Rodney Gilstrap.*

---------------------------------------------------------------------------------------------

2015-107
_____

IN RE TAKE-TWO INTERACTIVE SOFTWARE, INC.,
ROCKSTAR GAMES, INC., 2KSPORTS, INC., AND 2K GAMES, INC.,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00764-JRG, Judge J. Rodney Gilstrap.*

---------------------------------------------------------------------------------------------

2015-108
_____

IN RE SQUARE ENIX, INC.,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00765-JRG, Judge J. Rodney Gilstrap.*

---------------------------------------------------------------------------------------------

2015-109
_____

IN RE RIOT GAMES, INC.,

*Petitioner.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00766-JRG, Judge J. Rodney Gilstrap.*

---------------------------------------------------------------------------------------------

2015-111
_____

IN RE ACTIVISION PUBLISHING, INC.
AND BLIZZARD ENTERTAINMENT, INC.,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas in No. 2:13-cv-00750-JRG, Judge J. Rodney Gilstrap.*

---------------------------------------------------------------------------------------------

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Respondent Babbage Holdings, LLC certifies the following:

1.    The full name of every party or amicus curiae represented by me is: Babbage Holdings, LLC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: N/A.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

Charhon Callahan Robson & Garza, PLLC: Anthony Garza, Steven Callahan, Martin Robson, Michael Zweber, Mateo Fowler, Ujaala Rashid.

The Davis Firm, P.C.: William E. Davis III.

s/Anthony Garza
ANTHONY GARZA

Dated: November 14, 2014          *Counsel for Respondent*

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF RELATED CASE ......................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE...................................................................1

STATEMENT OF THE FACTS .................................................................2

    I.    Overview of the Patented Technology ................................................2

    II.    The Transfer Briefing .......................................................................4

    II.    The District Court's Opinions..........................................................12

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT ..........................................................................................15

    I.    Statement of Standard of Review.....................................................15

    II.    The District Court Did Not Clearly Abuse its Discretion ...................15

        A.  The Court Reasonably Credited Babbage's Inconvenience ............19

        B.  Petitioners Did Not Present Individualized Argument...................21

        C.  Overall, the Court's Balancing of the Private and Public Interest Factors was Not a Clear Abuse of Discretion ...................22

    III.    Petitioners Waited Too Long to Petition for the Writ.......................15

CONCLUSION .......................................................................................30

CERTIFICATE OF SERVICE ...............................................................32

## CONFIDENTIAL MATERIAL OMITTED

Pages 2, 5, 10, 11, 22 and 24 contain confidential material that has been omitted from this public version of the response. The information related to either: (1) Petitioners' interrogatory responses on the location and business partners supporting their publishing efforts for accused video-game titles or (2) licensing information related to the patent in suit.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Arabian v. Bowen,*
   966 F.2d 1441 (4th Cir. July 7, 1992) .........................................................18

*Bankers Life & Cas. Co. v. Holland,*
   346 U.S. 379 (1953) ...................................................................................16

*Chambers v. Sears Roebuck & Co.,*
   428 F. App'x 400 (5th Cir. June 15, 2011) ................................................19

*Cheney v. U.S. Dist. Ct.,*
   542 U.S. 367 (2004) ...................................................................................15

*D.H. Blair & Co. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006) .........................................................................18

*In re Apple Inc.,*
   456 F. App'x 907 (Fed. Cir. 2012)..............................................................30

*In re Apple Inc.,*
   743 F.3d 1377 (Fed. Cir. 2012) ...........................................................18, 19

*In re Barnes & Noble, Inc.,*
   743 F.3d 1381 (Fed. Cir. 2014) ..................................................................18

*In re Biosearch Techs., Inc.,*
   452 F. App'x 986 (Fed. Cir. Dec. 22, 2011) ..............................................17

*In re BNY ConvergEx Grp., LLC,*
   No. 961, 404 F. App'x 484 (Fed. Cir. Dec. 8, 2010) ..................................16

*In re Cordis Corp.,*
   769 F.2d 733 (Fed. Cir. 1985) ...................................................................16

*In re Genentech,*
    566 F.3d 1338 (Fed. Cir. 2003) ......................................................11, 21, 24

*In re Horseshoe Entm't,*
    337 F.3d 429 (5th Cir. 2003) ...............................................................17, 20

*In re Josephson,*
    218 F.2d 174 (1st Cir. 1954)......................................................................16

*In re McDonnell Douglas Corp.,*
    647 F.2d 515 (5th Cir. 1981) ..........................................................5, 18, 20

*In re Nintendo Co.,*
    589 F.3d 1194 (Fed. Cir. 2009) ...........................................................16, 17

*In re Radmax, Ltd.,*
    720 F.3d 285 (5th Cir. 2013) ................................................ 16, 17, 19, 20, 29

*In re Ralston Purina Co.,*
    726 F.2d 1002 (4th Cir. 1984) ...................................................................16

*In re Telular Corp.,*
    319 F. App'x 909 (Fed. Cir. Apr. 3, 2009)............................................18, 20

*In re United States,*
    348 F.2d 624 (1st Cir. 1965)...............................................................29, 30

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ................................................ 15, 17, 19, 20, 21

*Kasey v. Molybdenum Corp. of Am.,*
    408 F.2d 16 (9th Cir. 1969) .......................................................................16

*Lexion Med., LLC v. Northgate Techs.,*
    641 F.3d 1352 (Fed. Cir. 2011) .................................................................25

*Malacara v. Garber,*
    353 F.3d 393 (5th Cir. 2003) ..........................................................19, 24, 26

*Reese v. CNH Am. LLC,*
  574 F.3d 315 (6th Cir. 2009) ...................................................18

*Roberts & Schaefer Co. v. Merit Contracting, Inc.,*
  99 F.3d 248 (7th Cir. 1996) ....................................................18

*Shutte v. Armco Steel Corp.,*
  431 F.2d 22 (3d Cir. 1970) .....................................................18

*Sunbelt Corp. v. Noble, Denton & Assoc., Inc.,*
  5 F.3d 28 (3d Cir. 1993) .........................................................16

*United States v. Dunkel,*
  927 F.2d 955 (7th Cir. 1991) ..................................................19

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ...............................................................16

*Will v. United States,*
  389 U.S. 90 (1967) .................................................................15

**Statutes**

12 U.S.C. § 1292(b) ...................................................................29

28 U.S.C. § 1404(a) ...................................................... 2, 11, 15, 16, 18, 21

28 U.S.C. § 1406(a) ...................................................................16

**Other Authorities**

Jeremiah L. Hart, *Supervising Discretion: An Interest-Based Proposal
  for Expanded Writ Review of § 1404(a) Transfer of Venue Orders,*
  72 Ohio St. L.J. 139 (2011)....................................................16

## STATEMENT OF RELATED CASE

No appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court. Another writ of mandamus is pending in a related case: *In re Konami Digital Entm't, Inc.*, No. 15-114.

The following case presently pending in the district court may be affected by this Court's decision in the pending appeal: *Babbage Holdings, LLC v. The Walt Disney Co., et al.*, 2:13-CV-752 (E.D. Tex.).

## STATEMENT OF THE ISSUES

Whether the district court clearly abused its discretion in refusing to transfer these cases to the Northern District of California from the Eastern District of Texas when all of Plaintiff's evidence and all five of Plaintiff's party witnesses are located in Dallas, Texas.

## STATEMENT OF THE CASE

Babbage is based in Dallas. Babbage's five party witnesses have collectively lived in Dallas for 60 years. The residences of Scott Ellington, JP Sevilla, Katie Irving, Ashley Beall-Sarris, and Hao Ni were not manufactured for litigation purposes. None of these witnesses moved to Dallas to hold venue for this lawsuit. These witnesses negotiated for and purchased the patent from Dallas—their business records and evidence are there as well. Babbage chose to litigate close to home. For Babbage and its witnesses, the Eastern District of Texas is much more convenient than the Northern District of California.

1

Petitioners seek to shift the inconvenience in litigating this case to Babbage. Petitioners want to require each of the Babbage witnesses fly to San Francisco to trial, rather than requiring Petitioners' employees to fly to Texas. But shifting inconvenience does not justify relief under § 1404(a) and does not justify the extraordinary relief of mandamus. Given Babbage's strong Dallas ties, the Court did not clearly abuse its discretion.

## STATEMENT OF THE FACTS

### I.    Overview of the Litigation

U.S. Patent No. 5,561,811 came out of Xerox PARC, a storied skunkworks responsible for advances in printing, user interfaces, and computer networking. The patent, in particular, related to ways for multiple users to simultaneously interact with computer software, in ways where a user might customize his controls to his own personal preferences. Xerox licensed the patent widely— ███████████████████████ are licensees.

In 1992, when the patent was initially filed, the technology was revolutionary. In 2014, the technology is commonplace. Consumers nationwide connect regularly, over the internet, to simultaneously play video games like World of Warcraft and League of Legends using this technology. In particular, the functionality of this patent is crucial for hardcore gamers—gamers that customize their controls to suit their needs and seek multiplayer challenges.

2

Scott Ellington, of Dallas, heard of an opportunity to purchase this valuable property. From Dallas, he and his team negotiated for and purchased the patent from EOPUS, a Virginia company. Mr. Ellington worked with a patent attorney in Dallas to evaluate whether the technology could be enforced against infringing video-game publishers. Around this time, Mr. Ellington formed Babbage Holdings, LLC, to enforce these intellectual-property rights.

Babbage sued thirteen video-game publishers in the Eastern District of Texas for patent infringement. Babbage claims that each of these Defendants published and used video games that infringe claim seven of the '811 Patent. Of the thirteen Defendants, ten retained the same law firm, Erise IP (representing Petitioners here), while three other law firms represented the remaining three Defendants. Splitting litigation costs ten ways (by hiring a single law firm) reduced the cost of defending the litigation.

But the ten Erise Defendants are not similarly situated. Some, like Capcom, are based in the Northern District of California, while others, like Take Two and Riot Games, are based elsewhere (New York City and Santa Monica, respectively). Ex. 46. Some, like Electronic Arts, have numerous domestic offices, while others do not—505 Games has only one domestic office in Los Angeles. *Id.* The differences between the Erise Defendants made a group decision on transfer difficult—to maintain the cost savings promised by hiring

3

a common law firm, the Defendants had to choose to seek transfer to a *single* venue that was purportedly "clearly more convenient" for *all* of the disparate Erise Defendants. If Defendants sought transfer of Take Two, Riot Games, and Capcom to New York, Los Angeles, and San Francisco, respectively, litigation costs could triple.

Ultimately, all ten of the Erise Defendants asked to transfer all of the litigations to the Northern District of California, even though only four of the Erise Defendants are based there. Exs. 1, 2, 46. Because of the Erise Defendants' focus on the group, each Defendant did not rely on idiosyncratic arguments that might have damaged the group's chances for transfer, as a whole.

## II. The Transfer Briefing

Six of the seven Petitioners filed a consolidated motion to transfer, arguing the usual private and public factors.[1] Ex. 1. The briefing claimed, incorrectly, that Babbage's interest in maintaining the lawsuit in Marshall was minimized because Babbage's witnesses did not reside in the Eastern District of Texas. *Id.* at 2-3. But, for witnesses in Dallas, Marshall is an easy drive down I-20, while San Francisco requires airplane travel. Marshall is much more

---

[1] The seventh Petitioner, Activision, submitted a three-page motion that incorporated the group brief by reference and added Activision-specific facts. Ex. 2. Activision moved approximately two weeks after the other Defendants.

convenient than San Francisco for Dallas witnesses. *See*, *e.g.*, Ex. 5 at 2-3,[2] Exs. 10, 38. Petitioners also argued that "Babbage's witnesses and documents should be afforded no weight," a position unsupported by case law. *Compare* Ex. 55 at 3, 9 *with In re McDonnell Douglas Corp.*, 647 F.2d 515, 517-18 (5th Cir. 1981) (refusing to require transfer to Missouri from the Eastern District of Texas when the plaintiff lived in Texas, but not in the Eastern District).

The Erise Defendants' district-court transfer brief tried to present a California-centric front to the Court, ignoring all contrary evidence.[3] Ex. 1. For example, Electronic Arts listed one office in Redwood Shores, California, as its "U.S. Presence . . . or HQ." *Id.* at 4-5. Electronic Arts, however, has offices in Texas, Florida, and Louisiana. Exs. 14, 41, 46. These offices are important to this litigation—for example, Electronic Arts' only deposition so far was held in Florida, not California. Take Two only claimed Novato, California, as its headquarters, even though two of the four Take-Two defendants (including the parent company) are headquartered in New York City. Exs. 18-19, 46. Petitioners used the same table in their Petitions here. To their credit, here, Peti-

---

[2] Babbage often made identical factual and legal arguments in each of its different briefs opposing Defendants' motion to transfer. In these circumstances, rather than citing to each response brief, Babbage uses the signal "*See, e.g.*," and cites to the Capcom response brief (Ex. 5).

[3] ███████████████████████████████████████████
████████████████████████████████████
                              Ex. 55 at 8.

tioners added New York City as a "Principal Place of Business" for Take Two. *See, e.g.*, Capcom Pet. at 7.

The Erise Defendants' choice to present all of Defendants' transfer arguments together created problems. First, most evidence in the group brief was irrelevant to each Defendant. The mere fact that Ubisoft, for example, had employees in San Francisco does not make that city more convenient for the Take Two matter. Second, sharing one brief allows little space for individualized argument. Thus, the Erise Defendants' district-court transfer brief[4] cited to very little Defendant-specific evidence, which is cited to below:

- **All Defendants.** The brief summarized evidence for each Defendant showing that: (1) each Defendant did not have offices in the Eastern District of Texas (Ex. 1 at 5, citing individualized declarations, Ex. 2 at 2-3); (2) each Defendant did not know of any documents or witnesses in the Eastern District of Texas; and (Ex. 1 at 5, citing individualized declarations, Ex. 2 at 2-3) (3) that the Northern District of California was closer to each Defendant than the Eastern District of Texas (Ex. 1 at 11, Ex. 2 at 2).

- **Activision.** The Activision brief noted that (1) Activision's headquarters were in California,[5] (2) product design, development, and quality-assurance activities occurred in Woodland Hills, California; Foster City, California; and Madison, Wisconsin, (3) documents were located in Santa Monica, California, along with Woodland Hills, Foster City, and Madison, (4) knowledgeable employees and witnesses were located in Santa Monica. Ex. 2 at 2.

---

[4] Because Activision filed separately, it could have provided detailed, individualized argument. Activision instead filed a three-page motion. Ex. 2.

[5] Activision's headquarters are in Santa Monica, California—in the Central District of California. Ex. 11. Woodland Hills is also in the Central District, while Foster City is in the Northern District.

- **Bandai Namco.** The brief noted that Bandai Namco (1) was based in San Jose, California, (2) maintained relevant witnesses and evidence in San Jose, Los Angeles, and Tokyo, and (3) developed and tested games in Tokyo, San Jose, and Europe. Ex. 1 at 4.

- **Capcom.** The brief noted that Capcom (1) was based in and had relevant witnesses and documents in San Mateo, California; and Sherman Oaks, California[6] and (2) developed and tested games in Sherman Oaks, San Mateo, and Japan. Ex. 1 at 4.

- **Electronic Arts.** The brief noted that Electronic Arts (1) was based in Redwood Shores, California,[7] (2) maintained relevant witnesses and evidence in Burnaby, Canada, and (3) developed and tested games in Canada, Romania, Russia, and Massachusetts. Ex. 1 at 4.

- **Riot Games.** The brief noted that Riot Games (1) was based in and developed and tested games in Santa Monica and Los Angeles, and (2) had relevant witnesses and documents in Santa Monica. Ex. 1 at 4.

- **Square Enix.** The brief noted that Square Enix (1) was based in El Segundo, California,[8] and (2) maintains relevant witnesses and evidence and develops and tests games in El Segundo and Tokyo. Ex. 1 at 4-5.

- **Take Two.** The brief noted that Take Two was based in, maintained relevant documents and evidence in, and developed and tested games in Novato, California.[9] Ex. 1 at 5. Take Two nevertheless offered its latest Rule 30(b)(6) corporate representative in New York City.

The dearth of Petitioners' individualized evidence is reflected in the Appendix. For each Petitioner, there is exactly one three-page declaration that shows any particularized evidence, and each declaration addressed exactly one

---

[6] San Mateo is located in the Northern District of California; Sherman Oaks is in the Central District.

[7] Redwood Shores is located in the Northern District of California.

[8] El Segundo is located in the Central District of California.

[9] Novato is located in the Northern District of California.

game.[10] Petitioners attached additional evidence to their reply brief (discovery responses and charts, *e.g.*, Capcom App'x A148-184), but that information had already largely been included with Babbage's Response (Exs. 46-54).

Because the Erise Defendants chose to present their argument as a group, each Defendant did not have the opportunity to provide the defendant-specific argument necessary to show that its case was "clearly more convenient" in San Francisco. For example, Bandai Namco, Capcom, Riot Games, and Square Enix do not maintain East Coast offices, but emphasizing that fact would have weakened the arguments for Take Two and Electronic Arts, which do. Further, Bandai Namco, Capcom, and Electronic Arts were based in the Northern District of California, but could not emphasize that fact, given that five of the Erise Defendants were based in the Central District.

In contrast, Babbage filed an individualized response for each Defendant. Babbage's want to keep the lawsuit in East Texas applied with equal force to each lawsuit—Babbage's witnesses and evidence are in Dallas; thus, East Texas is much more convenient than San Francisco. Babbage nevertheless addressed all of the evidence identified in Defendants' Rule 26 disclo-

---

[10] Capcom App'x A69-72 (Capcom Dec.); A73-76 (Electronic Arts Dec.); A77-80 (Bandai Namco Dec.); A81-84 (Riot Games Dec.); A85-88 (Square Enix Dec.); A89-92 (Take Two Dec.); Activision App'x A60-63 (Activision Dec.).

8

sures and venue interrogatory responses, and also included additional sources of evidence identified from publicly available information. Exs 46-54. Broadly, Babbage considered the following sources of evidence in its analysis:

- **Parties.** Babbage identified all domestic offices of the parties and noted the location of any witness identified by each Defendant. Exs. 46-47.

- **Party Affiliates.** Many of the Defendants have affiliates that assist with the development and/or quality testing of particular games. For example, Babbage noted one party affiliate for Capcom (its parent company in Tokyo) and thirteen party affiliates for Electronic Arts (located all across the world). *Id.*

- **Licensees.** Licensees are often rich sources of evidence showing the importance of the technology and industry royalty rates. Babbage included licensees in its analysis. Licensees were located across the country and around the world. *See*, *e.g.*, Ex. 5 at 3-4, citing Exs. 20-33.

- **Prosecuting Attorneys.** Prosecuting attorneys are often deposed in patent litigation. Thus, Babbage included those attorneys (located in New York City) in its analysis. Ex. 34.

- **Distributors, Developers, and Quality Testers.** Finally, Babbage analyzed the third-party distributors, developers, and quality testers that likely use the patented technology. Each would provide evidence of infringement by Defendants. Exs. 46-47.

- **Inventors and Previous Owners of the Patent.** Babbage expected that the inventors and previous owners of the patent maintained information germane to this lawsuit. Exs. 63-65.

Babbage provided an analysis tailored to each Defendant, noting domestic and international ties far from San Francisco and significant activity in Texas. Babbage cited to the following defendant-specific facts:

- **Activision.** Babbage noted Activision offices in California, Wisconsin, New York, Iowa, Minnesota, and Texas (Austin and Dallas). Babbage also noted relevant evidence at:

  Ex. 3 at 3, 5-6, Exs. 11, 35, 37, 39, 48.

- **Bandai Namco.** Babbage noted Bandai Namco offices in San Jose, France, and Tokyo, and one employee in Texas.

  Ex. 4 at 3, 5, Exs. 15, 42, 51.

- **Capcom.** Babbage noted a Capcom office in San Mateo and an employee in Austin, Texas.

  Ex. 5 at 3-5, Exs. 12-13, 40, 49.

- **Electronic Arts.** Babbage noted Electronic Arts' headquarters in Redwood City, its "Worldwide Customer Experience" team in Austin, Texas, its BioWare office in Austin, Texas,

  Ex. 6 at 3-6, Exs. 14, 41, 45, 50.

- **Riot Games.** Babbage noted Riot Games offices in Santa Monica, St. Louis, and New York City. Ex. 7 at 4-6, Exs. 16, 52.

- **Square Enix.** Babbage noted Square Enix offices in El Segundo, Tokyo, Montreal, and London. Ex. 8 at 3-5, Exs. 17, 43, 53.

10

*Confidential Material Redacted*

- **Take Two.** Babbage noted Take Two offices in New York City, Cincinnati, San Diego, Boston, Novato, Northridge (California), Australia, Scotland, the United Kingdom, and Canada. ████████████

████████████████████████████████████

████████████████████████████████████

[11] Ex. 9 at 3-6, Exs. 18-19, 36, 44, 54.

At this point, neither Babbage nor the district court needed to weigh the materiality of these witnesses, but Babbage contended that each identified entity was likely to maintain relevant evidence. *See In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) ("It was not necessary for the district court to evaluate the significance of the identified witnesses' testimony.").

Babbage balanced the public- and private-interest factors, and noted that each Defendant had not shown that San Francisco was "clearly more convenient" for each lawsuit. *See, e.g.*, Ex. 5 at 8-17. Babbage also noted that Activision, Riot Games, and Square Enix failed to show that the case "could have been brought" in San Francisco, as required under § 1404(a).[12] Defendants did not respond or cite to evidence addressing this point in their Reply;[13] the Court should deny mandamus for these Petitioners for this reason alone.

_____

[11] Northridge and Camarillo are located in the Central District of California.

[12] *See* Ex. 3 at 9, Ex. 7 at 7-8, Ex. 8 at 7-8.

[13] The only relevant argument in the Reply: "Babbage does not seriously contest that it could have brought its case in the Northern District of California, or that the video games identified within its Complaints are sold within the Northern District of California." Ex. 55 at 2. Petitioners cited no evidence whatsoever.

### III.    The District Court's Opinions

The district court separately analyzed the evidence and legal argument for each Petitioner. In each opinion, however, the district court took issue with the Erise Defendants' litigation strategy, finding that the motions relied on facts from unrelated (and irrelevant) Defendants.[14] The district court also found a failure of proof—each Petitioner simply failed to rebut Babbage's defendant-specific analysis of the transfer factors.[15] The district court was forced to rule on the motion to transfer considering only the scant evidence cited in the Erise Defendants' motion that was particularized to each Petitioner.[16]

Two additional complaints appeared with frequency in the opinions. First, the district court noted that Petitioners appeared to assume that Babbage accused only one game of infringement, when Babbage's Complaints were not so limited. The district court noted "concern" that the Petitioners were ig-

---

[14] *See* Ex. 58 (Capcom Order) at 3 ("The collective motion addresses the facts of unrelated defendants as a group and argues the transfer factors as a group."); *see also* Ex. 56 at 3; Ex. 57 at 3; Ex. 59 at 3; Ex. 60 at 3; Ex. 61 at 3; Ex. 62 at 3.

[15] *See* Ex. 58 at 3 ("Capcom's reply was also a collective reply—identical to the one filed in six other cases—that did not specifically address Babbage's individualized response."); *see also* Ex. 57 at 3; Ex. 59 at 6; Ex. 60 at 3; Ex. 61 at 3; Ex. 62 at 3-4.

[16] *See* Ex. 58 at 3-4 ("In addressing Capcom's motion to transfer, the Court considers only the evidence presented in the collective motion that is specific to Capcom and its case."); *see also* Ex. 56 at 3; Ex. 57 at 4; Ex. 59 at 6; Ex. 60 at 3; Ex. 61 at 3; Ex. 62 at 4.

noring relevant evidence related to other games.[17] Second, the district court noted that Petitioners limited their analysis to a handful of party witnesses and the inventor, while Babbage provided "charts detailing numerous potential party and non-party sources of evidence in the U.S. and whether or not this forum is closer for those parties."[18]

The Court noted other Petitioner-specific faults:

- **Activision.** The Court faulted Activision for not providing evidence that its New York, Iowa, Minnesota, and Texas offices were not relevant to the litigation. Ex. 56 at 6. The Court noted that Activision only cited witnesses in the Central District of California. *Id.* at 7.

- **Bandai Namco.** The Court noted that it was "unclear" what evidence was located in the Northern District of California, as Bandai Namco only identified relevant technical evidence overseas. Ex. 57 at 5-6.

- **Capcom.** The Court faulted Capcom for not including evidence on where its technical evidence is located. Ex. 58 at 6.

- **Electronic Arts.** The Court faulted Electronic Arts for not adequately addressing its facilities in Austin, Los Angeles, Baton Rouge, and Florida, or its witnesses in its disclosed Massachusetts location. Ex. 59 at 5.

- **Riot Games.** The Court faulted Riot Games for not addressing its facilities in St. Louis and New York City. Ex. 60 at 4. The Court noted that Riot Games only identified witnesses in the Central District of California. *Id.* at 5-6.

---

[17] For example, the Court faulted Capcom for analyzing only one title—Lost Planet 3—even though Babbage's complaint was not limited to that game. Ex. 58 at 5; *see also* Ex. 56 at 6; Ex. 57 at 5; Ex. 59 at 6; Ex. 62 at 5.

[18] Ex. 58 at 6-7; *see also* Ex. 56 at 7; Ex. 57 at 6-7; Ex. 59 at 5-6; Ex. 60 at 6; Ex. 61 at 5-6; Ex. 62 at 6-7.

- **Take Two.** The Court faulted Take Two for providing "no evidence at all as to New York (Take-Two's headquarters), Ohio, any of Rockstar's[19] offices, or other developers". Ex. 62 at 5-6.

The district court ultimately found that each Petitioner did not show that San Francisco was "clearly more convenient" than East Texas.

Six of the Petitioners filed their petitions on November 3, 2014—over a month after the district court denied the motions to transfer. Activision waited three more days, filing on November 6, 2014.

## SUMMARY OF THE ARGUMENT

Petitioners have not shown a "clear and indisputable" right to the extraordinary remedy of mandamus. First, and most importantly, all five of Babbage's party witnesses live in Dallas. East Texas is clearly more convenient for Babbage's witnesses, thus, the district court's refusal to inconvenience these witnesses is not a clear abuse of discretion. Second, Petitioners cannot use mandamus to undo their failed litigation strategy. Petitioners forced the district court to compare a generalized brief with very little defendant-specific evidence to Babbage's defendant-specific weighing of the applicable transfer factors. The district court critically examined the evidence each Petitioner advanced to support its position and found the evidence wanting. Finally, the Court should deny the Petition as procedurally improper, as Petitioners waited over a month to seek relief.

---

[19] Rockstar is one of the four Take-Two Defendants.

## **ARGUMENT**

### I.     **Statement of Standard of Review**

An appeals court may issue a writ of mandamus "upon a determination that there has been a clear abuse of discretion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). An applicant must show that (1) the party has "no other adequate means to attain the relief he desires"; (2) the right to the writ is "clear and indisputable"; and (3) "the writ is appropriate under the circumstances." *Id.* at 311 (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). The Fifth Circuit has found the first and third factors satisfied when issuing a writ to address a refusal to transfer a matter under § 1404(a). *Id.* at 318-319. Although the Court is bound to apply Fifth and Federal Circuit precedent, the Court should find that the first and third *Cheney* factors are not met because (1) a direct appeal is adequate, and (2) the writ is an inappropriate way of reviewing refusals to transfer, leading to delay.[20] *See*

---

[20] *See In re Volkswagen*, 545 F.3d at 323-27 (King, J., dissenting) (noting that (1) the majority is "flat wrong" in determining that direct appeal is effectively unavailable in addressing a possible error in a § 1404(a) transfer decision and (2) the majority uses mandamus as a way of reviewing nonappealable orders, leading to delay); *see also Will v. United States,* 389 U.S. 90, 99 (1967) ("Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous."); *In re BNY ConvergEx Grp., LLC*, No. 961, 404 F. App'x 484 (Fed. Cir. Dec. 8, 2010) (refusing to consider issuing a

*also Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 382-83 (1953) (refusing to consider a writ of mandamus to challenge a transfer under § 1406(a)).

In the Fifth Circuit, a litigant must show that a proposed venue is "clearly more convenient," using a balancing test, to justify transfer under § 1404(a). *In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009). Section 1404(a) commits the balancing to the sound discretion of the trial court based on an "**individualized, case-by-case** consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (emphasis added).

In the Fifth Circuit, an appeals court may review the substance of the trial court's balancing of § 1404(a) factors on mandamus. *In re Radmax, Ltd.*, 720 F.3d 285, 288-90 (5th Cir. 2013). Although the Court is bound to apply Fifth and Federal Circuit precedent, Babbage contends that the Court should not reweigh the balancing on mandamus, as in the First, Third, Fourth, and Ninth Circuits. Those approaches are faithful to the All Writs Act.[21]

---

writ to address finding of personal jurisdiction); *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

[21] *See, e.g.*, *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954); *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 30 (3d Cir. 1993); *In re Ralston Purina Co.*, 726 F.2d 1002, 1004-05 (4th Cir. 1984); *Kasey v. Molybdenum Corp. of Am.*, 408 F.2d 16, 20 (9th Cir. 1969); *see also* Jeremiah L. Hart, *Supervising Discretion: An Interest-Based Proposal for Expanded Writ Review of § 1404(a) Transfer of Venue Orders*, 72 Ohio St. L.J. 139, (2011) (arguing that the Fifth Circuit radically changed established mores on mandamus).

16

The Fifth Circuit cases issuing the writ have found substantial plaintiff presence in the transferee forum. In *Radmax*, "virtually all of the events and witnesses regarding the case . . . [were] in the transferee forum." *Radmax*, 720 F.3d at 290. In *Volkswagen*, similarly, "all of the documents and physical evidence relating to the accident [were] located in the Dallas Division," (the proposed transferee forum). *Id.* at 317. In both cases, a plaintiff lived in the proposed transferee district or division. *See In re Volkswagen*, 545 F.3d at 317-18 (two plaintiffs lived in Dallas, the third in Kansas); *North v. Radmax*, No. 12-405, Doc. 24 ("The parties and all likely witnesses live within the Tyler Division.").[22]

The Federal Circuit has interpreted Fifth Circuit law as "forbid[ding] treating the plaintiff's choice of venue as a factor," and has issued a writ of mandamus when a district court "gave the plaintiff's choice of venue far too much deference." *In re Nintendo Co.*, 589 F.3d at 1200. Although the Court is bound to apply Fifth and Federal Circuit precedent, Babbage contends that the Court should give greater deference to the plaintiff's choice of forum, as done

---

[22] *See also In re Horseshoe Entm't*, 337 F.3d 429, 430 (5th Cir. 2003) (issuing a writ of mandamus to transfer to the Western District of Louisiana when the plaintiff lived there); *In re Biosearch Techs., Inc.*, 452 F. App'x 986, 989 (Fed. Cir. Dec. 22, 2011) (issuing a writ of mandamus to transfer to California when both Plaintiffs were headquartered there).

in the Second, Third, Fourth, Sixth, and Seventh Circuits.[23]

Nevertheless, this Court—applying Fifth Circuit law—has refused to grant a writ of mandamus, where, as here, the Eastern District of Texas found that a Dallas plaintiff would be inconvenienced by a transfer to a distant forum. *In re Telular Corp.*, 319 F. App'x 909, 910 (Fed. Cir. Apr. 3, 2009) (refusing to direct a transfer to Chicago when "Gellman, a resident of Texas, also asserts that it would be far more inconvenient for him to try his case in Illinois"). The Fifth Circuit, too, has refused to force transfer from the Eastern District of Texas to a distant forum (Missouri, where the defendant was based), when the plaintiff lived in Texas, but outside of the Eastern District. *McDonnell-Douglas*, 647 F.2d at 517-18. *Telular* and *McDonnell-Douglas* are consistent with the limited role of mandamus—the Court should only issue the writ if the decision is "*without any basis* for a judgment of discretion." *In re Apple Inc.*, 743 F.3d 1377, 1378 (Fed. Cir. 2012) (emphasis added).

As a procedural matter, in the Fifth Circuit, a district court need only consider the facts cited to in a litigant's brief, not all of the evidence attached

---

[23] *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Arabian v. Bowen*, 966 F.2d 1441, at *1 (4th Cir. July 7, 1992) (unpublished); *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996); *see also In re Barnes & Noble, Inc.*, 743 F.3d 1381, 1383 (Fed. Cir. 2014) (recognizing differences in application of § 1404(a) between the Fifth and Sixth Circuits).

18

to a motion. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence . . .").[24] In the same vein, if the "evidence before the [district] court was so general in nature the [district] court was unable to evaluate its relevance," the Court should not issue a writ. *In re Apple Inc.*, 743 F.3d at 1378.

## II.     The District Court Did Not Clearly Abuse its Discretion

### A.     The Court Reasonably Credited Babbage's Inconvenience

Babbage identified five party witnesses with longstanding ties to Dallas: Scott Ellington (who has lived in Dallas for thirty-one years), Hao Ni (ten years), JP Sevilla (two years), Katie Irving (six years) and Ashley Beall-Sarris[25] (twelve years). Ex. 10. Although the LLC was formed more recently, the witnesses that Babbage intends to call at trial did not move to Texas to support venue—the witnesses had lived in Dallas for years. *Id.*

Babbage's party witnesses distance this case from *Volkswagen*, *Radmax*, and *Horseshoe Entertainment*. In each of those cases, the Circuit issued a writ when at least one plaintiff was based in the transferee forum. *In re*

---

[24] *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 408 (5th Cir. June 15, 2011) (same).

[25] Ms. Beall-Sarris no longer assists Babbage, but did at the time of the transfer briefing.

*Volkswagen*, 545 F.3d at 317-318; *North v. Radmax*, No. 12-405, Doc. 24; *In re Horseshoe Entm't*, 337 F.3d at 430. Here, granting the motion would require Babbage's party witnesses to fly to San Francisco rather than drive to Marshall—a large inconvenience for Babbage's witnesses. Exs. 10, 38. Further, Marshall and San Francisco are 1600 miles apart, increasing the inconvenience accordingly. *In re Radmax*, 720 F.3d at 288-89. A district court may reasonably find this shift as an inconvenience to Dallas witnesses.

This Court considered a similar fact pattern in *In re Telular Corp.* There, the Court refused to issue a writ to the Eastern District of Texas upon its refusal to transfer a Dallas plaintiff's case to Chicago, even though the Defendant was based in Illinois. *In re Telular*, 319 F. App'x at 910. The Fifth Circuit, too, refused to issue a writ to require transfer to Missouri from East Texas when the Plaintiff lived inside Texas, but outside of the Eastern District. *In re McDonnell-Douglas*, 647 F.2d at 517-18. This case is closer to *Telular* and *McDonnell-Douglas* and further from *Volkswagen*. Had Petitioners sought transfer to Dallas, where all of Babbage's witnesses live, the district court would likely have found no inconvenience, as in *Volkswagen*. Instead, like in *Telular* and *McDonnell-Douglas*, Petitioners sought to transfer the case hundreds of miles from where Babbage's witnesses reside. The dis-

20

trict court may reasonably credit this inconvenience to Babbage's witnesses without running afoul of *Volkswagen*.

Petitioners fault the Court for not finding that Babbage's witnesses "were purely litigation induced." *See, e.g.*, Capcom Pet. at 11. As a threshold matter, this finding is prohibited by *Genentech*.[26] Further, Petitioners confuse the admittedly recent formation of the LLC with Babbage's witnesses' longstanding, 60-year ties to Dallas. Babbage did not move witnesses to Dallas to establish venue. Further, these are the witnesses that will tell Babbage's story at trial—these witnesses understand why Babbage purchased the patent and the value Babbage attached to the patent. Babbage must testify through witnesses; its witnesses live in Dallas. The district court did not clearly abuse its discretion in considering the convenience of these witnesses.[27]

### B. Petitioners Did Not Present Individualized Argument

Each Petitioner was hamstrung by the group's litigation strategy. By choosing to address all of the § 1404(a) factors with the other Erise Defendants, each Petitioner was forced to advance positions that applied equally well to Defendants located in San Francisco, New York, and Los Angeles. Further,

---

[26] *In re Genentech*, 566 F.3d at 1344 ("It was not necessary for the district court to evaluate the significance of the identified witnesses' testimony.").

[27] Although some of Babbage's party witnesses are lawyers, they are not Babbage's litigation or prosecution counsel. The Court should not discount the convenience of these witnesses because of their chosen profession.

*Confidential Material Redacted*

in the fifteen-page brief covering seven Defendants, each Petitioner cited to very little party-specific evidence and made very little party-specific argument. This decision was especially damaging on Reply. Babbage identified over 100 entities relevant to the litigation and provided documentation showing why each likely maintained relevant evidence.[28] Had Petitioners filed separate replies, they might have addressed these entities on an individualized basis. Aggregated, Petitioners were forced to make ad hominem attacks against Babbage rather than addressing Babbage's evidence.

The district court faulted Petitioners for aggregating their argument and held each Petitioner to its proof. This was not a clear abuse of discretion.

### C.    Overall, the Court's Balancing of the Private and Public Interest Factors was Not a Clear Abuse of Discretion.

In light of the parties' briefing, the Court's weighing of the private and public interest factors was not a clear abuse of discretion.

**Relative Ease of Access to Sources of Proof.** The opinions show that the district court considered the location of evidence at Babbage, Petitioners, and third-party witnesses. *See, e.g.*, Ex. 58 at 4-6. The district court, however,

---

[28] *See, e.g.*, Ex. 5 at 2-5, citing Ex. 10 (Babbage witnesses); Ex. 12 (Capcom); Ex. 13 (Austin Capcom employee); Ex. 73 ███████ licensees); *see also* Exs. 20-33 (showing location of licensees); Ex. 63 (Xerox PARC); Ex. 64 (previous owner); Ex. 65 (second previous owner); Ex. 34 (prosecuting attorneys); Ex. 40 (Capcom venue interrogatory response, ████████████████ ████████████████ ); Ex. 49 (chart summarizing Babbage's analysis).

reasonably doubted the candor of Petitioners' declarations. Babbage identified numerous offices and employees for Petitioners nationwide (including in Texas) that Defendants omitted from their California-centric motion and refused to address in their Reply. The Court suggested that Defendants were unreasonably limiting the scope of Babbage's complaint to avoid disclosing non-California sources of proof that might prevent transfer, especially in the case of Take Two.[29] (Of note—Take Two still refuses to consider New York City witnesses in its analysis here, without justification). *See* Take Two Pet. at 18-23 (listing only Novato, not New York).

A district court must make these sorts of inferences from a limited evidentiary record—here, the district court reasonably concluded that Petitioners were less than forthright in their disclosures. The district court was not required to treat Petitioners' declarations or venue interrogatory responses as gospel in light of their incongruity with Babbage's comprehensive factual disclosures (such as Electronic Arts' and Take Two's refusal to list non-California locations, despite clear evidence to the contrary). In particular, the district court was not required to credit each Petitioner's assurances that the non-California (and Texas) entities identified by Babbage in its responsive briefing were irrelevant, especially as Babbage provided documentary evi-

---

[29] *See* Ex. 56 at 5-6, Ex. 59 at 4-5, Ex. 62 at 4-6.

*Confidential Material Redacted*

dence as to why it believed the entities to be relevant. Further, Petitioners only specifically attacked **six** parties identified by Babbage in their Reply[30] (and did so unconvincingly).[31] The district court was not required to root through the appendix to find more, *Malacara*, 353 F.3d at 405, nor was the district court required to assess the centrality of witnesses identified by Babbage in light of Petitioners' discovery. *In re Genentech*, 566 F.3d at 1344 (district court need not evaluate significance of particular witnesses).

The district court's analysis was careful. The Court found this factor favored transfer for Bandai Namco and Capcom—Petitioners based in the Northern District of California without numerous domestic offices.[32] The Court found that the remaining Defendants did not demonstrate that this factor weighed in their favor.[33]

Petitioners argue that the district court did not "consider" the evidentiary record. But Petitioners conflate the district courts' failure to *address* the evidence with a refusal to *consider* the evidence. Here, the evidentiary record

---

[30] Ex. 55 at 7 n.7 ████████████████████████
████████████████████

[31] The Reply is careful to state that that the entities were not involved in the "development, testing, or publishing" of the accused games, not that the entities had no relevant evidence pertaining to the litigation. Ex. 55 at 7 n.7.

[32] Ex. 57 at 6; Ex. 58 at 6.

[33] Ex. 56 at 6; Ex. 59 at 5; Ex. 60 at 5; Ex. 61 at 5; Ex. 62 at 6.

was massive, containing documentary evidence on over 140 video-game titles. The Court should not require a district court to make a document-by-document record supporting its decision, especially on mandamus. *See Lexion Med., LLC v. Northgate Techs.*, 641 F.3d 1352, 1359 (Fed. Cir. 2011).

Defendants nevertheless argue that the district court did not *consider* all of the evidence because (1) it did not take Defendants' declarations and interrogatory responses as absolutely true (addressed above), and (2) the Court mistakenly stated that Defendants only presented evidence on one game, even though their venue interrogatory responses listed many more. But Petitioners provided **exactly one declaration** each, and those declarations addressed **exactly one game each.** Capcom App'x A69-96. Further, Petitioners urged the Court *not* to consider evidence outside of the one game analyzed in the declarations.[34] Finally, Defendants did not cite to detailed evidence about each game in their Reply—Defendants instead made generalized allegations that the games related strongly to California. Ex. 55 at 6-7. The district court was faced with a detailed Babbage Response that listed, individually, the entities germane to each litigation, responded to by a ten-page reply for *all* Petitioners that did not specifically address Babbage's evidence on an entity-by-entity ba-

---

[34] Ex. 55 at 5-6 ("Babbage tried to manufacture a legal basis for venue in this Court by seeking discovery . . . with respect to over 140 video games not identified in the Complaints.").

sis. The district court was only required to consider the evidence and argument in Petitioners' briefs, not what Petitioners *could* have addressed in separate, individualized briefs. *Malacara*, 353 F.3d at 405. The district court reasonably found, based on this briefing, that Petitioners only provided detailed evidence on one game each—the game listed in each Petitioner's declaration and addressed in the Motion to Transfer.

**Cost of Attendance of Willing Witnesses.** In each opinion, the Court found that this factor favored Babbage.[35] Babbage provided evidence that a transfer to San Francisco would inconvenience its five party witnesses and identified numerous sources more convenient (or equally convenient) to East Texas than San Francisco. Although some Petitioners identified party witnesses in the Northern District of California, most[36] did not. Given Babbage's witnesses, the Court's ruling on this factor was not a clear abuse of discretion.

**Compulsory Process to Secure Attendance of Witness.** Without analysis, the district court found that this factor favored all Petitioners except Take Two. *See, e.g.*, Ex. 58 at 7. The district court likely based its Take Two ruling on Take Two's failure to address the witnesses at its New York head-

---

[35] Ex. 56 at 7; Ex. 57 at 7; Ex. 58 at 7; Ex. 59 at 6; Ex. 60 at 6; Ex. 61 at 6; Ex. 62 at 7.

[36] Ex. 56 at 7 (Activision did not); Ex. 59 at 5 (Electronic Arts); Ex. 60 at 5-6 (Riot Games); Ex. 61 (Square Enix).

quarters. Ex. 62 at 5 ("The Court has significant concerns that inconvenient sources of evidence may simply be being omitted.").

**All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive.** Petitioners cited no evidence in their brief supporting this factor, and instead only argued that all of the Defendants sought transfer. Ex. 1 at 12-13. Babbage, however, provided evidence showing that (1) both cities have nearby airports, (2) it is cheaper to rent cars from Shreveport Regional Airport or Dallas-Fort Worth International Airport than San Francisco International Airport; (3) parking is cheaper in Marshall than San Francisco, and (4) lodging and food costs are lower in Marshall than San Francisco. *See, e.g.*, Ex. 5 at 7, Exs. 66-72. The district court noted that Marshall would be a "less expensive venue for traveling witnesses" and that Babbage's witnesses would have to travel a shorter distance to reach Marshall than San Francisco.[37] The district court concluded that Petitioners had not carried its burden on this factor, a conclusion supported by the record.

**Administrative Difficulties Flowing from Court Congestion.** Defendants argued that this factor was neutral. Ex. 1 at 15. Babbage, however, noted that the district court had already held a scheduling conference and had scheduled a *Markman* hearing and jury selection. *See, e.g.*, Ex. 5 at 14-15.

---

[37] Ex. 58 at 7; *see also* Ex. 56 at 8; Ex. 57 at 7; Ex. 59 at 6-7, Ex. 60 at 6-7, Ex. 61 at 6; Ex. 62 at 6-7.

The district court found that Petitioners had not shown that this factor favored transfer, a finding supported by the record. *See, e.g.*, Ex. 58 at 8.

**Local Interest in Having Localized Interests Decided at Home.** The district court found that this factor favored Petitioners based in the Northern District of California,[38] even though Babbage argued that "shifting convenience from one party to another is not an appropriate basis for transfer," *see, e.g.*, Ex. 5 at 15. The district court found that this factor favored Babbage for Defendants based elsewhere.[39]

**Familiarity of the Forum With the Law that Will Govern the Case.** All parties agreed that the Northern District of California and the Eastern District of Texas were familiar with patent law. Ex. 1 at 15; *see, e.g.*, Ex. 5 at 15. The Court found this factor neutral. *See, e.g.*, Ex. 58 at 9.

**Avoidance of Unnecessary Problems in the Application of Foreign Law.** All parties agreed that the case did not present any issue regarding conflicts of law. Ex. 1 at 15; *see, e.g.*, Ex. 5 at 15. The Court found this factor neutral. *See, e.g.*, Ex. 58 at 9.

In sum, the Court found that (1) three factors favored Bandai Namco and Capcom, while three favored Babbage, (2) two factors favored Electronic

---

[38] Ex. 57 (Bandai Namco) at 8-9; Ex. 58 (Capcom) at 8-9; Ex. 59 (Electronic Arts) at 7-8.

[39] Ex. 56 at 9; Ex. 60 at 7-8; Ex. 61 at 7-8; Ex. 62 at 8-9.

Arts, while four favored Babbage; (3) one factor favored Activision, Riot Games, and Square Enix, while five favored Babbage; and (4) zero factors favored Take Two, while six favored Babbage. Of course, the raw counting of factors is not dispositive or appropriate. *In re Radmax*, 720 F.3d at 290 n.8. The district court, considering all of the factors, the inconvenience to Babbage's witnesses, and Petitioners' failure to provide Petitioner-specific evidence and argument, found that each Petitioner had not carried its burden to show that San Francisco was "clearly more convenient," as required to justify transfer. On this record, those findings are not a clear abuse of discretion. The Court should thus deny the petitions.

### III.   Petitioners Waited Too Long to Petition for the Writ

Most Petitioners waited 34 days to petition this Court for a writ of mandamus; Activision waited 37. In contrast, by statute, a litigant must seek an interlocutory appeal within *ten days* of the district court's order. 12 U.S.C. § 1292(b). Petitioners ask the Court for extraordinary relief, but did not see fit to seek that relief quickly. *See In re United States*, 348 F.2d 624, 626 (1st Cir. 1965) (suggesting that the appropriate time to seek mandamus is the normal appeal period). The Federal Circuit recognizes that briefing can be accomplished in this timeframe—the Court ordered Babbage, here, to respond to seven petitions within ten days of their filings. Further, Petitioners waited

around five months after Babbage filed suit to move to transfer. Again, Petitioners cannot seek the extraordinary writ of mandamus in equity when they did not diligently seek to protect their interests in the district court. As a matter of equity, the Court should refuse to grant a writ due to Petitioners' delay. *In re United States*, 348 F.2d at 626.[40]

## **CONCLUSION**

These cases are not extraordinary. The district court determined that transferring these cases to San Francisco would inconvenience Babbage's five party witnesses in Dallas. The district court found, in light of this evidence, that Petitioners had not shown that San Francisco was "clearly more convenient." This is not a clear abuse of discretion and does not justify the extraordinary relief that Petitioners seek. In sum, Petitioners have not shown "clear and indisputable" entitlement to the writ. *Cheney*, 542 U.S. at 380-81. The Court should thus deny the petitions.

---

[40] *See also In re Apple Inc.,* 456 F. App'x 907 (Fed. Cir. 2012) (mandamus petition denied where the defendant waited three and a half months after the district court denied its transfer request to petition the Federal Circuit for mandamus).

Dated:  November 14, 2014          Respectfully submitted,

s/Anthony Garza

ANTHONY GARZA
STEVEN CALLAHAN
**CHARHON CALLAHAN
ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiff-Appellant*

31

**United States Court of Appeals**
**for the Federal Circuit**
Nos. 2015-104, -105, -106, -107, -108, -109, -111

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by CHARHON CALLAHAN ROBSON & GARZA, PLLC., attorneys for Respondent to publish this document.  I am an employee of Counsel Press.

On **November 14, 2014** counsel has authorized me to electronically file the foregoing **Consolidated Response (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

> Eric A. Buresh
> (Principal Counsel)
> Erise IP, P.A.
> 6201 College Boulevard
> Overland Park, KS 66211
> 913-777-5600
> eric.buresh@eriseip.com
> Counsel for Petitioners

A paper copy of the confidential version will also be emailed and mailed to the above principal counsel.

32

Additional, a copy will be sent to these U.S. District Judges:

> Hon. Rodney Gilstrap
> U.S. District Judge
> U.S. District Court for the
> Eastern District of Texas
> Sam B. Hall, Jr. Federal Building
> and United States Courthouse
> 100 East Houston Street
> Marshall, Texas 75670
> Phone: (903) 935-3868
> Fax: (903) 935-2295

**via Express Mail.**

November 14, 2014                                  /s/ Robyn Cocho
                                                   Robyn Cocho
                                                   Counsel Press